**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **CR NO. 01-76-1 (RC)** |
| | : | |
| **STEVEN D. JONES** | : | |
| | : | |
| **Defendant.** | : | |

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION TO AMEND THE JUDGMENT TO ASSIGN RESTITUTION PAYMENTS TO THE VICTIMS OF CRIME FUND**

The government has filed a motion asking the Court to amend the judgment in this case to "designate the Victims of Crime Fund to receive restitution payments" (GM 1).[1] The government asks the court to:

> [A]mend the judgment in this case to substitute the unspecified list of victims noted in the judgment with the Victims of Crime Fund for purposes of receiving the restitution payments in this case. The Court's Judgment (Docket Doc. No. 54) notes on page 5 that a "Modified Victims Restitution Address List [is] to be submitted by the Probation Officer to the Clerk's Office Financial Division." Court records, however, reflect that restitution payments are not being disbursed to victims but are accumulating as unclaimed funds. Staff of the U.S. Attorney's Office contacted U.S. Probation and determined that it does not have a victim list in this case. Accordingly, the United States submits that the judgment should be amended to designate the Victims of Crime Fund to receive restitution payments. As established by the following supporting memorandum, the Mandatory Victims Restitution Act (MVRA) provides authority to the Court for such a disposition.

[1] "GM" refers to the government's motion filed on May 8, 2025.

(GM 1).

**FACTS**

Mr. Jones pleaded guilty on July 13, 2001, to conspiracy, 18 U.S.C. § 371. The conspiracy involved cashing stolen checks. On October 18, 2001, Mr. Jones was sentenced to five years in prison to be followed by three years of supervised release and a $100.00 special assessment. He was also ordered to pay "restitution to the check fraud victims—financial institutions—in the amount of $354,936" (GM 2). The restitution was to be paid at a rate of no less than $100.00 per month.

Mr. Jones was released from prison on June 3, 2005. His term of supervised release expired on June 2, 2008. Mr. Jones's "liability to pay restitution" terminated on June 2, 2025, twenty years after his release from prison. 18 U.S.C. § 3613(b).

The government offers no explanation for how for 20 years it apparently made no effort to determine whether restitution was being properly distributed or even whether the list of the victims was ever filed. Nor does the government provide information as to exactly when, or how, it discovered this.

Nor does the government offer any explanation as to why it did not file the pleadings related to Mr. Johnson's house until just before the expiration of the 20-year period of extinguishment of liability. Nor does the government give any idea about how long it has been aware of the house, although it has clearly been aware of the house for a number of years.

## ARGUMENT

### I. Statutory Interpretation

Statutory interpretation begins with the text and its "plain meaning." *Bobb v. Wilkie*, 589 U.S. 399, 404 (2020). As the Court has "stated time and again," "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). And when the statute's plain language is "unambiguous," that "first step of the interpretive inquiry" is also the "last." *Rotkiske v. Klemm*, 589 U.S. 8, 13 (2019).

The Court's "job [is] to apply faithfully the law Congress has written," not to rewrite it to suit the government's wishes. *Henson v. Santander Consumer USA, Inc.*, 582 U.S. 79, 89 (2017). The "Court does not 'read into statutes words that aren't there,' *Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212[, 215] (2020)." *United States v. Neely*, 124 F.4th at 942. Thus, the court does not "supplement" a statute. *Id*.

### II. The Present Case

#### A. Expiration of Liability and Enforcement

As the government explained in a prior pleading in this case, § 3613(b) & (f) "define[] the length of time in which those with . . . restitution liability are subject to civil enforcement" as 20 years after the date of release from imprisonment, which was June 2, 2025, in Mr. Jones's case. ECF #142, p. 2. Thus, according to

the government, "Mr. Jones is subject to enforcement action through June 3, 2025." ECF #142, p. 2.[2] The government had previously described the period of liability:

> It is well established that "[t]he United States can enforce a restitution judgment "in the manner provided for the collection and payment of fines in 18 U.S.C. § 3613." United States v. Pickett, 505 Fed. Appx. 838, Slip Op. at *3 (11th Cir. 2013) (citing in support United States v. Fuentes, 107 F.3d 1515, 1533 n. 33 (11th Cir.1997)) (unpublished). However, the length of time that a restitution judgment is enforceable is limited. "Under 18 U.S.C. § 3613, an order of restitution is a lien in favor of the United States, and the lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated under subsection (b)." Pickett, Slip Op. at *3; 18 U.S.C. § 3613(c). The lien becomes unenforceable 20 years from the entry of judgment or 20 years after the release from imprisonment of the person, whichever is later…. Id. at § 3613(b)." Id. (Emphasis added.)

ECF #139, pp. 3-4.

Whether it is June 2 or 3, 2025, the time for liability and enforcement of restitution in this case has passed. Thus, the Court cannot amend the judgment to change the payee, as Mr. Jones no longer has any liability for restitution, and the lien on the house is "unenforceable" according to the government itself.

---

[2] In a March 14, 2024, letter to Mr. Jones, the government told him that the "termination date for your liability [is] June 2, 2025." Whether it is June 2 or June 3 is not material to this opposition.

**B. The Statute**

Putting aside the 20-year expiration, the government's motion fails on the merits as well. As an initial matter, the government ignores § 3664(o), which provides that a restitution order is final and cannot be modified, except in limited circumstances. This Court has previously decided in this case that:

> The Court reiterates that it has limited authority to modify Defendant's mandatory requirement to pay restitution to his victims and do so at a rate of no less than $100.00 per month. *See* Order Denying Motions at 2, ECF No. 92 ("Generally, a court lacks the power to modify a restitution order except under the limited circumstances set forth in 18 U.S.C. § 3664(o)."). The Mandatory Victim Restitution Act delineates the circumstances in which a district court may modify a restitution order, and Defendant does not raise any of those issues here. *See United States v. Banks*, 62 F. Supp. 3d 125, 130 (D.D.C. 2014) ("[R]eading [18 U.S.C.] section § 3664(o) . . . as [a] comprehensive list[] of ways to modify a restitution order . . . comports with congressional intent."); *United States v. Villongco*, No. 07-cr-009, 2016 WL 3747508 at *5 (D.D.C. July 11, 2016).

ECF No. 144, p. 2. This analysis is equally applicable to the government, which has not even addressed § 3664(o), thus eschewing any attempt to claim that it applies. No provision of § 3664(o) being applicable to this case, the government's motion should be denied for the reasons previously discussed by the court on this basis alone.

Indeed, in *United States v. O'Hara*, 114 F.4th 557, 560 (6th Cir. 2024), the court reviewed § 3663(o) and held that "if a court wants to change a restitution order, it must point to express statutory authorization to do so." The government has not

contended—in fact, it could not—that § 3663(o) applies to Mr. Jones's case. In *O'Hara*, the court found no provision other than § 3663(o) that would allow a modification of the restitution order. Thus, having "repeatedly said that final judgments cannot be amended absent express statutory authority," the court decided that the district court was not authorized "to alter a restitution order, post judgment, to change the payee." *Id*. at 562.

The government, while ignoring § 3664(o), relies upon § 3664(g) as the authority for its request. (GM 2). That section provides:

> (g)(1) No victim shall be required to participate in any phase of a restitution order.
>
> (2) A victim may at any time assign the victim's interest in restitution payments to the Crime Victims Fund in the Treasury without in any way impairing the obligation of the defendant to make such payments.

The language of that provision is clear—only a victim may assign their interest in restitution to the Crime Victims Fund ("CVF"). The government is asking the Court to rewrite the statute to give the Court the authority to itself assign the restitution to the CVF. This runs afoul of the Supreme Court's holding that:

> The fundamental problem with Castro-Huerta's implicit intent argument is that the text of the General Crimes Act says no such thing. Congress expresses its intentions through statutory text passed by both Houses and signed by the President (or passed over a Presidential veto). As this Court has repeatedly stated, the text of a law controls over purported legislative intentions unmoored from any statutory text. The Court may not "replace the actual text with speculation as to Congress' intent." *Magwood v. Patterson*, 561 U.S. 320, 334 (2010). Rather, the Court "will presume more modestly" that "the legislature says what it

> means and means what it says." *Henson* v. *Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017) (internal quotation marks and alterations omitted).

*Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022). Moreover:

> "'[W]e ordinarily resist reading words or elements into a statute that do not appear on its face.'" *Dean v. United States*, 556 U.S. 568, 572 (2009) (quoting *Bates v. United States*, 522 U.S. 23, 29 (1997)).

*Fischer v. United States*, 603 U.S. 480, 508 (2024).

**C. Cases**

Nonetheless, the government cites two cases, which it claims support its argument. It fails to point out, however, that there are cases that hold the opposite, and that the cases upon which it relies conflict with D.C. Circuit law.

In *United States v. Pawlinski*, 374 F.3d 536, 539-40 (7th Cir. 2004), the district court amended a restitution order to direct money already paid to the district court to go to the CVF after very few victims claimed any of the money. The court in *Pawlinski* rejected the argument made by the government in Mr. Jones's case:

> An order of restitution under that statute (and no other basis for the order is suggested) must go to victims of the defendant's crimes, and the Crime Victims Fund is neither a victim of Pawlinski nor a representative of his victims. There are only two exceptions, other than for certain drug crimes, see 18 U.S.C. § 3663(c): if the order is imposed pursuant to a plea agreement which provides for restitution to nonvictims, or if the victims assign their right to restitution to the Crime Victims Fund. 18 U.S.C. §§ 3663A(a)(3), 3664(g)(2). Neither exception is applicable to this case.

*Id*. at 539-40. In finding that the amended "sentence was illegal," the court relied upon the fact that "[f]ederal courts cannot order restitution in a criminal case without a statutory basis," and that the district court erred when it "ignore[d] the statutory limits on when nonvictims may be included in a restitution order." *Id*. at 540.

In *United States v. Speakman*, 594 F.3d 1165, 1275 (10th Cir. 2010), a victim "specifically disclaimed her interest" in restitution, so the district court ordered that it be paid to the CVF. The court of appeals held that was contrary to the statute:

> The district court's emphasis on § 3664(g)(2) is also misplaced. By its own terms, that provision only permits restitution to be made to the Fund if the *victim* "assign[s] the victim's interest in restitution payments to the Crime Victims Fund." *Id.* § 3664(g)(2). The statute could have been written so as to authorize the court to order restitution payments to the Fund even when the victim failed to assign her interest, or to require the victim to either accept restitution or assign her interest to the fund. However, as written, the statute only authorizes restitution to (1) the victim (§ 3663A(a)(1)), (2) the victim's estate, if the victim is deceased (§ 3663A(a)(1)), (3) "persons other than the victim" if "agreed to by the parties in a plea agreement" (§ 3663A(a)(3)), or (4) the Crime Victims Fund, *if the victim* assigns her interest to the Fund (§ 3664(g)(2)). Here, the predicates for (2), (3), and (4) are not met, and the victim has renounced her interest in restitution. There is thus no statutory basis to support the district court's award of restitution to the Fund.

*Id*. at 1175-76 (emphasis in original). The court also found support for its decision in the fact that:

> [T]he Senate considered and rejected a broader version of § 3664(g)(1): "(g)(1) No victim shall be required to participate in any phase of a restitution order. If a victim declines to receive restitution made mandatory by this title, *the court shall order that the victim's share of any restitution owed be deposited in the Crime Victims Fund in the Treasury.*" S.Rep. No. 104–179, at, U.S.Code Cong & Admin.News 1995 at p.924, 6 (1995) (emphasis added). Section 3664(g)(2) in this proposed bill, just as in the version finally adopted, also gave victims the option of assigning their interest to the Fund. *Id.* Thus, the proposed legislation would have explicitly authorized the restitution order entered by the district court here; however, the enacted statute lacks any such explicit authorization. While evidence of what Congress considered but did not enact may not be conclusive proof of the proper construction of the statute, this legislative history further underscores what we believe is the proper reading: that Congress only authorized courts to order a restitution payment to the Fund when the victim herself assigns her interest to the Fund.

*Id*. at 1176.

In contrast to *Speakman* and *Pawlinksi*, neither of which the government even mentions, the government relies upon *United States v. Johnson,* 378 F.3d 230 (2d Cir. 2004), and *United States v. Hankins*, 858 F. 3d 1273 (9th Cir. 2017).

The court in *Speakman* specifically disagreed with the court's reasoning in *Johnson* for two primary reasons. First, the court in *Johnson* "disregard[ed] the principle" that restitution cannot be ordered without a statutory basis. *Speakman*, 594 F.3d at 1177. And:

> Our second reason for disagreeing with the *Johnson* court reflects a deeper disagreement between our two courts about the nature of restitution. The Second Circuit has a "long-held understanding of the purposes of restitution, which include not only the compensation of

> victims, but also the punishment of offenders." *Johnson,* 378 F.3d at 245; *see also United States v. Brown,* 744 F.2d 905, 909 (2d Cir.1984) ("Restitution undoubtedly serves traditional purposes of punishment."). We have consistently held, however, "that the MVRA does not inflict criminal punishment, and thus is not punitive." *United States v. Serawop,* 505 F.3d 1112, 1122–23 (10th Cir.2007) (collecting cases) (emphasis in original). Accordingly, "the purpose of restitution 'is not to punish defendants or to provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses.'" *Id.* at 1124 (quoting *United States v. Hudson,* 483 F.3d 707, 710 (10th Cir.2007)).

*Id*.

In *Johnson*, which involved a crime of violence, the court stated that if an order of restitution was not imposed even if a victim refused to accept payments, that it "would undermine the power of the criminal justice system to punish defendants, where appropriate, through orders of restitution." *Id*. at 244. Thus, the court held that restitution was mandatory, and that even if "3664(g)(2) authorized victims to make such an assignment [to CVF], it does not preclude the court from doing so." *Id*. at 245.

In *Hankins*, 858 F.3d at 1275, the victim and the defendant reached a settlement agreement regarding an existing restitution order and the district court then redirected the restitution to the CVF. The court of appeals found that allowing such a redirection served restitution's "compensatory and punitive purposes." *Id*. at 1279. The court held that such "redirection" was permissible as the "process of deciding where to send restitution payments already ordered is distinct from the authority to order restitution in the first

place." *Id*. at 1280-81. Furthermore, the court did not "interpret the MVRA's silence regarding redirection as a limitation on the district court's power to craft a solution that is consistent with the purposes of the MVRA and the Fund and that fosters the compensatory and punitive goals of the statute." *Id*. at 1281.

Thus, both *Johnson* and *Hankins* rely heavily on the punitive nature of restitution. But in this regard, in *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012), the court found that "the purpose of the MVRA . . . is 'essentially compensatory: to restore a victim'" (quoting *United States v. Boccagna*, 450 F. 3d 107, 115 (2d Cir. 2006)). Therefore, "[a]warding restitution in excess of the victim's actual loss would be punitive in nature and thus fall outside the scope of the MVRA." *Id*. Thus, the D.C. Circuit is in accord with *Speakman* in rejecting punishment as a goal of restitution and in conflict with the court in *Johnson*.

As discussed above, there are fundamental flaws in the reasoning of *Johnson* and *Hankins*. Neither case so much as mentions § 3664(o). Both rely heavily on the punitive purposes of restitution—a position that the D.C. Circuit has rejected. And, neither case mentions the Supreme Court's jurisprudence on statutory interpretation, even though both fail to follow the comprehensive statutory framework on restitution and instead modify the

statute contrary to the Supreme Court's directives. The references in *Hankins* to the court "craft[ing] a solution" and "foster[ing]" the "goals" of the statute are examples of rewriting a statute specifically rejected by the court in *Castro-Huerta* and *Fischer*.

**D. The House**

For all the reasons discussed above, the Court should also deny the government's requests related to its proposed sale of the house at 4624 B Street, SE. First, the proceeds would not go to any victim and cannot be assigned to the CVF by the Court. Therefore, the Court should order that the protective order it previously issued be vacated and the lien on the property be removed.

In addition, after June 2, 2025, Mr. Jones has no liability for any restitution payments and the government's requests related to the house should also be denied on that basis as well.

**<u>CONCLUSION</u>**

For all the above reasons, the government's motions—to amend the judgment and to allow the sale of Mr. Jones's house—should be denied. The restitution payments being held by the district court should be returned to Mr. Jones and the lien on the house should be removed.

Respectfully submitted,

/s/

______________________

A. J. KRAMER
FEDERAL PUBLIC DEFENDER
625 Indiana Avenue, N.W., Suite 550
Washington, DC 20004
(202) 208-7500
a._j._kramer@fd.org