UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>STEVEN D. JONES,<br><br>Defendant, | Crim. No. 01-0076-1 (RC) |

**UNITED STATES' REPLY TO ITS MOTION TO AMEND JUDGMENT**
**TO ASSIGN RESTITUTION PAYMENTS TO THE VICTIMS OF CRIME FUND**

The United States, through counsel, the United States Attorney for the District of Columbia, respectfully submits this reply to its motion to amend the judgment in this case to substitute unavailable, unresponsive, incompetent or nonexistent victims from the original list of victims noted in the judgment with the Victims of Crime Fund, for purposes of receiving restitution payments, avoiding the result of there being a missing victim payee from the Court's original scheme of loss compensation. Alternatively, consistent with case authority, the government proposes a distribution pro rata of otherwise undeliverable victim payments to the other available victims in the case. The Court's Judgment (ECF No. 54) notes that a "Modified Victims Restitution Address List [is] to be submitted by the Probation Officer to the Clerk's Office Financial Division." *Id.* at 5. Court records, however, reflected that restitution payments were not being disbursed to victims but were accumulating as unclaimed funds.

A staff member of the U.S. Attorney's Office, after contacting U.S. Probation to no avail, later contacted the Clerk's Office and obtained a victim list in this case showing 115 victims and allotments of restitution. The associated contact information for this list of victims was either incomplete or nonexistent. Thus, a staff member of the U.S. Attorney's Office worked together

with the originating law enforcement agency, the U.S. Postal Inspection Service, to contact the listed victims and determine their continued willingness to receive restitution payments in this case. The United States will separately file under seal a spreadsheet showing the current results of these efforts. Accordingly, the United States submits that the judgment should be amended to designate the Victims of Crime Fund to receive restitution payments, or that the payments should be distributed pro rata. As established by the following supporting memorandum, the Mandatory Victims Restitution Act (the "Restitution Act" or "MVRA"), together with the All-Writs Act, 28 U.S.C § 1651(a), provides the Court authority to order such a disposition.

## DISCUSSION

## I. DEFENDANT HAS NO DEFENSE TO THE WRIT OF EXECUTION

Defendant's Opposition begs the question: what is Defendant's concern as restitution must be paid anyway? Indeed, Defendant does not explain his stake in where restitution payments go after he pays them and identifies no injury to him if a substitute recipient is chosen consistent with legislative and court goals to compensate victims for their losses. Defendant's true contention is revealed at the end of his opposition, after his arguments about the appropriate recipient of restitution payments: "[T]he Court should also deny the government's requests related to its proposed sale of the house at 4624 B Street, SE. First, the proceeds would not go to any victim and cannot be assigned to the CVF by the Court. Therefore, the Court should order that the protective order it previously issued be vacated and the lien on the property be removed." Opp'n at 12.

### A. Unavailability of Habeas Review and Procedural Default

Defendant argues for substantive preclusion of restitution based on an alleged procedural flaw concerning how the Court should resolve the issue of unresponsive, incompetent, or

nonexistent victims from the original list of victims ordered to be disbursed restitution payments. Such an argument is unpersuasive.

Defendant tries to mount what is effectively a substantive effort to block enforcement without making any substantive assignment of error as to his restitution sentence. The issue presented here concerns the disbursement of the restitution payments received and not the original order requiring Defendant to make restitution payments. Defendant has no basis for interposing a barrier to the United States timely filed writ of execution enforcing the restitution judgment. Defendant did not object to the restitution sentence either in this Court or on direct appeal. Instead, Defendant entered a plea of guilty, waiving his rights in the process, and did not file an appeal. Thus, Defendant cannot now bring a substantive challenge to the writ of execution based on procedural issues concerning the disbursement of restitution.

At this stage, several years after sentencing, blocking the government's efforts to enforce a monetary penalty, on grounds other than the incompetence of the enforcement effort itself, would require a section 2255 motion. But no grounds lie for such a motion here because "[as] long as a district court considers the § 3553(a) factors and imposes a sentence within the statutory limits for an offense, the criminal proceeding will not be infected with any error of fact or law of the fundamental character . . . Such a sentence is lawful and cannot be a complete miscarriage of justice." *United States v. Tenney*, Crim. No. 21-640 (CKK), 2024 WL 4583106, at *6 (D.D.C. Oct. 25, 2024) (quoting *United States v. Folk*, 954 F.3d 597, 605 (3d Cir. 2020)).

Further, Defendant's failure to lodge a claim of error or appeal resulted in a procedural default:

> "[The defendant] procedurally defaulted his claims by not filing a direct appeal before seeking relief under Section 2255. Where a defendant fails to appeal an alleged error at trial or sentencing, he is procedurally barred from raising that claim by means of a later collateral attack unless he shows cause for his failure to do so

> and prejudice resulting from his failure. *See Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal."); *United States v. Hicks*, 911 F.3d 623, 627 (D.C. Cir. 2018) (a defendant's failure to raise a challenge to his conviction or sentencing on direct appeal results in that claim being procedurally defaulted, and as such, it may "be raised in habeas only if the defendant establishes [ ] cause for the default and actual prejudice arising from the alleged violation...") (internal quotation marks and citation omitted). Cause requires that a claim "is so novel that its legal basis [was] not reasonably available to counsel" at the time of appeal. *Bousley*, 523 U.S. at 622.

*Id.* at *7. This recitation of the legal standard is consistent with this Court's description of the standard in *United States v. Kim*, Crim. No. 21-0219 (RC), 2023 WL 3377381, at *4-5 (D.D.C. May 11, 2023). Defendant procedurally must thus mount a separate, direct challenge to the writ of execution not based on some alleged claim of error associated with the restitution sentence. Defendant's effort to challenge the writ of execution directly, however, through his separately filed response (ECF No. 159) to the United States' supplemental memorandum in support of its application for a writ of garnishment (ECF No. 155) lacks merit and should not be credited.

**B. Defendant's Restitution Challenge Is Without Merit**

Even could Defendant advance a procedurally viable challenge to restitution, his claim would still fail on the merits. The court in *United States v. Berardini*, 112 F.3d 606 (2d Cir. 1997), upheld a restitution order with characteristics like those in this case. The lineup of multiple defendants and numerous victims in *Berardini* was even more compelling than in this case. The *Berardini* case involved twenty-nine defendants charged in a massive fraudulent telemarketing conspiracy, including $27 million in total losses, with defendant Berardini himself ordered to pay $39,271 in restitution to sixty-two victims. *Id.* at 607-08. Unlike Defendant here, though, "Berardini appealed, contending, *inter alia*, that the proper amount of restitution is $11,791." *Id.* at 608. Initially on appeal, the Second Circuit, "noting that the Judgment (a) did not list the 42 victims to whom restitution of the remaining $27,480 (i.e., the difference between $39,271 and

$11,791) was to be made, and (b) did not make clear what obligation, if any, the court imposed on Berardini in the event that the government does not succeed in locating any or all of those remaining victims prior to the expiration of Berardini's term of supervised release, remanded by summary order to the district court for clarification."

The district court then clarified that under the sentence and the Judgment, Berardini was to pay the full $39,271 in restitution, and that the court anticipated that some or all the identified victims who had not yet been located would come forward to claim the restitution payments to which they were entitled. *Id*. at 608-09. The district court's rationale for imposing the $39,271 restitution order was the government's representation that it had the names and addresses of all victims whose losses totaled that sum, although on remand the prosecutor had revealed that the government did not in fact have the addresses of the victims owed the remaining balance above $11,791. *Id*. at 609. The court expected that the government would file a lien as to the remaining $27,480, with the victims to be identified and the amount of the loss known. The only contingency was the government's ability to find identified but unlocated victims. *Id.*

The twenty fully identified and located victims were to be paid their restitution totaling $11,791 first. *Id* . Berardini was to pay $10,800 of this amount during the three years of his supervised release, with the remaining $991 owed to the identified and located victims, plus the $27,480 payable to the sixty-two identified but unlocated victims. *Id*. The government's restitution judgment lien, the district court understood, was to remain in place for twenty years, or until the balance of the restitution owed was satisfied, remitted, set aside, or terminated, allowing victims to come forward and claim their individual shares of the ordered restitution. *Id*.

The Second Circuit concluded that the district court did not abuse its discretion in ordering and structuring restitution to the identified victims under these circumstances. *Id*. at 609-10. The

Second Circuit was mindful of the practical issue of the district court's command to make restitution to victims who were unable to be located. *Id*. at 610. The *Berardini* court posited several alternatives that might be employed to remedy the issue: (1) modifying the conditions of supervision, (2) payments to deceased victims could be made to their estate, (3) establishing a trust for unlocated victims, perhaps with the government as trustee, and (4) disposing of any remaining undisbursed funds as unclaimed funds. *Id*. at 611-12. At bottom, the *Berardini* court concluded that there was sufficient evidence supporting the restitution order and no abuse of discretion. *Id*. at 612-13.

Under comparable circumstances here, the Court should reach a similar conclusion regarding the restitution order in this case. Given passage of the MVRA in 1996, which contains section 3664(g)(2), contemporaneous with *Berardini*, consideration of distribution to the Victims of Crime Fund, which was not then a well-known option, unsurprisingly was not mentioned in that decision, but provides a potential resolution here.

## II. THE ISSUE IS UNAVAILABILITY OF VICTIMS, NOT AUTHORITY TO ADJUST RESTITUTION

In his Opposition, Defendant focuses primarily on statutory provisions of the Restitution Act providing the Court authority to award restitution and for the finality and limited mutability of a restitution judgment. *See* Opp'n at 3–7. That said, the dilemma that the United States seeks to address, and the proper focus of its motion, is that some victims are unavailable to receive restitution payments, which the provisions of the Restitution Act do not address.

One of the first decisions recognizing and seeking to address this issue was *United States v. Johnson*, 378 F.3d 230, 245 (2d Cir. 2004). The provision in the MVRA respecting the victim's choice whether to participate in the loss compensation component of sentencing (section 3664(g)(1)) was not designed to limit the court's authority to fashion a broad scheme to

compensate victims in appropriate cases. The *Johnson* court recognized that the mandatory restitution requirement under section § 3663A and the well-accepted purposes of restitution, together with the punishment of offenders, means that "victims may not veto the obligation of the District Court to impose orders of restitution." *Id*. (citing *United States v. Brown*, 744 F.2d 905, 909 (2d Cir.1984) ("Restitution undoubtedly serves traditional purposes of punishment.")). Following this reasoning, the *Johnson* court found no error in the reassignment of a restitution payment to the Crime Victims Fund and explained that "[a]lthough § 3664(g)(2) authorizes victims to make such an assignment, it does not preclude courts from doing so." *Id*.

More recently, in *United States v. Hankins*, 858 F.3d 1273 (9th Cir. 2017), the Ninth Circuit likewise recognized the principle that "'private individuals should not be allowed to thwart the penal goals of the criminal justice system[.]'" *Id.* (citing *United States v. Bearden*, 274 F.3d 1031, 1041 (6th Cir. 2001)). Reasoning from this principle, *Hankins* reached the same conclusion as *Johnson* regarding the court's ability to assign restitution payments to the Crime Victims Fund under circumstances involving a settlement between the victim and the defendant. The *Hankins* Court explained that "[o]nce a restitution order is imposed, the MVRA leaves the district court with limited options to modify restitution." *Id*. at 1277 (citing *United States v. Turner*, 312 F.3d 1137, 1143 (9th Cir. 2002)). "Ultimately, only the court—rather than the victim or the defendant—can impose or modify the defendant's sentence. Neither the victim, nor the victim's assignee, has the authority to settle, release, satisfy, or otherwise modify a restitution judgment." *Id.*

Several Circuits agree that victims cannot waive or otherwise control enforcement of a criminal statute; victims should not be able to thwart the scheme of loss compensation established by courts in their restitution orders. *See United States v. Ridgeway*, 489 F.3d 732, 737-38 (5th Cir. 2007) (quoting *Kelly v. Robinson*, 479 U.S. 36, 52 (1986); discussing Supreme Court's rationale

for restriction on discharge of restitution orders in bankruptcy: " 'The criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole. Thus, it is concerned not only with punishing the offender, but also with rehabilitating him. Although restitution does resemble a judgment 'for the benefit of' the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution[.]' ")); *United States v. Edwards*, 595 F.3d 1004, 1013-14 (9th Cir. 2010) (discussing *United States v. Cloud*, 872 F.2d 846 (9th Cir. 1989), and examining *Kelly* and the principle that "Criminal restitution is mandatory under the MVRA and cannot be waived by a prior civil settlement")); *United States v. Bearden*, 274 F.3d 1031, 1041 (6th Cir. 2001) (same; collecting cases).

"Private parties cannot simply agree to waive the application of a criminal statute." *United States v. Savoie*, 985 F.2d 612, 618-19 (1st Cir. 1993) (citing *United States v. Hairston*, 888 F.2d 1349, 1355 (11th Cir. 1989), and holding that a civil settlement did not necessarily preclude a restitution order under the Victim and Witness Protection Act because the penal purpose of that act was not a litigated issue in the civil case); *see also United States v. Rico Indus., Inc.*, 854 F.2d 710, 715 (5th Cir. 1988) (similar).

## III. FILLING STATUTORY GAPS AS PART OF STATUTORY INTERPRETATION

Defendant's opposition focuses on basic principles of statutory interpretation. But Defendant fails to address the principles of statutory interpretation used by the *Johnson* and *Hankins* courts in support their decisions permitting abandoned restitution payments to be disbursed to the Crime Victims Fund. The court in *United States v. General Battery Corp., Inc.*, 423 F.3d 294 (3d Cir. 2005), addressed statutory interpretation of federal liability statutes that are generally intended to have uniform nationwide application, like the MVRA. *Id.* at 304 (citing

*Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989); "federal statutes are generally intended to have uniform nationwide application"). "[U]niform interpretation of an undefined [part of] a federal liability statute 'is not free-wheeling common-law rulemaking,' but rather 'filling a statutory gap, a standard office of interpretation.'" *Id.* at 305 (quoting *Jansen v. Packaging Corp.*, 123 F.3d 490, 507 (7th Cir. 1997) (Posner, J., concurring and dissenting)); *see also United States v. Northrop Corp.*, 59 F.3d 953, 958–960 (9th Cir. 1995).

In undertaking the process of statutory interpretation, courts must give effect to Congressional intent. *Northrop*, 59 F.3d at 958. Even would federal common law otherwise operate, it is displaced when Congress has decided the matter. *See, e.g., Cent. Bank v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176-77 (1994) (holding that the conclusion that Congress did not intend to impose aiding and abetting liability under the Securities and Exchange Act "resolve[d] the case"). The *Northrop* court explained that "merely because a 'gap' is encountered does not mean that a vacuum necessarily is created. . . . Moreover, although 'once Congress addresses a subject ... the justification for lawmaking by the federal courts is greatly diminished,' . . . the possibility nonetheless remains that federal common law might operate to fill the gap[.]" *Id.* at 958 (citing *Nw. Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 95 n.34 (1981); *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98 (1991).

In *Northrop*, the court extensively examined and analyzed a statute to discern legislative intent. In so doing, the court articulates several generally accepted canons of statutory interpretation that should guide the process. The first canon discussed is as follows:

> [C]ourts must "presum[e] that a remedy was deliberately omitted from a statute . . . when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." *E.g., Northwest Airlines, Inc.*, 451 U.S. at 97; *see also Karahalios v. National Fed'n of Federal Employees*, 489 U.S. 527, 533 (1989) ("It is an 'elemental canon' of statutory interpretation that where a statute expressly provides a remedy, courts must be especially reluctant to

> provide additional remedies. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979). In such cases, '[i]n the absence of strong indicia of contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate.'" (quoting *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 15 (1981))).

*Northrop*, 59 F.3d at 959. The canon serves to ensure that courts do not upset a 'comprehensive legislative scheme' by creating additional 'procedures for enforcement' that Congress did not intend. *Id.* at 960 (quoting *Nw. Airlines*, 451 U.S. at 97). Where, as here, Congress provided no remedy addressing the dilemma needing resolution, that is, an unavailable victim, it is difficult to discern whether the omission was inadvertent or intentional. "Congress's silence on the matter . . . could reflect just as reasonably its failure to contemplate the issue, its desire to leave resolution of the issue to the courts, its approval of such [an approach], or its determination that government consent is required. Therefore, we are faced with a 'gap' in the statutory scheme. Accordingly, we must apply federal common law." *Northrop*, 59 F.3d at 960. Application of federal common law, of course, means filling the statutory gap.

The *Northrop* court also wrestled with the choice between filling the gap based on applicable state-based policy provisions that might conflict with the federal statutory scheme or national standards, or federal policy provisions that might assure adherence to a unified national standard. Ultimately, given the nature of the statutory provision establishing a national standard, the court recognized that replacing a state standard with a federal common law standard was a valid choice. *See Northrop*, 59 F.3d at 960-61.[1] As explained by the court in *William A. Graham*

---

[1] "When Congress does not direct whether the rule should be uniform, we determine if a uniform federal rule is appropriate based on the three-part test set out in *United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979). 'Under that test, a court must determine ... (1) whether the issue requires "a nationally uniform body of law"; (2) "whether application of state law would frustrate specific objectives of the federal program"; and (3) whether "application of a federal rule would disrupt commercial relationships predicated on state law."'" *Northrop*, 59 F.3d at 960–61 (quoting

*Co. v. Haughey*, 646 F.3d 138, 144 (3d Cir. 2011), "when the federal courts engage in the development of gap-filling common law, [it must be done] with the statute's policy goals in mind." 646 F.3d at 144; *see, e.g., Rodgers v. United States*, 332 U.S. 371, 373 (1947) (referencing an example related to prejudgment interest) (citations omitted).

Thus, here the Court has received restitution payments from Defendant, but as to particular victims, it is unable to make contact to verify a means of disbursing the payment. While "[s]ection 3664 . . . requires the probation officer [to] provide all victims, inter alia, (1) notice of the offense of conviction, (2) an opportunity to submit information regarding the loss amount, (3) an opportunity to submit an affidavit regarding such amount, and (4) the applicable affidavit form[,] . . .[,] [t]he statute does not, however, require any action by a victim to formally pursue a recovery. Indeed, section 3664(g)(1) provides '[n]o victim shall be required to participate in any phase of a restitution order.'" *United States v. Mullins*, Crim. No. 22-0179, 2024 WL 5200431, at *2 (S.D.W. Va. Dec. 23, 2024) (citation omitted). As noted, the victims' failure to participate—whether willful or inadvertent—cannot undercut the Court's penal goals in ordering restitution. "Even if a victim disclaims their right to restitution payments, 'the Government's penal objectives in imposing and collecting restitution cannot be waived by the victim.'" *Bradley, Allen & Stagg, LLC v. Reggie*, Civ. A. No. 22-2819, 2023 WL 5529708, at *4 (E.D. La. Aug. 28, 2023) (quoting *United States v. Ridgeway*, 489 F.3d 732, 737 (5th Cir. 2007)).

Given the absence of a remedy under the MVRA for the problem of the unavailable victim, clearly there is a gap in the statute's coverage of this issue. Thus, relying on recognized principles of statutory construction, this Court should devise a common law solution that is consistent with

---

*Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1458 (9th Cir. 1986), and *Kimbell Foods*, 440 U.S. at 728–29)).

the goals and policy standards of the Act. As the Act is part of a federal criminal statute with nationwide application, it is important to apply a unified national standard and not District of Columbia standards to resolve this issue.

The government invites the Court's attention to *United States v. O'Connor*, 321 F. Supp. 2d 722 (E.D. Va. 2004), which involved a large-scale fraud scheme and 216 identified victims. Unfortunately, after sentencing, there was no comprehensive list of victims with loss amounts and complete contact information. Therefore, the Clerk's Office encountered major obstacles disbursing restitution payments to victims. To address the problem, the court devised a plan to contact victims and implemented a plan to make pro rata payments to the victims. *Id*. at 724-732.

The circumstances of this case present a similar challenge and call for a comparable solution. Major concerns, however, remain a part of these solutions. First, the pro rata payments can result in some victims receiving greater restitution payments than are consistent with their established losses. Second, the plan will likely leave a cache of undisbursed restitution that will be treated by the Court as unclaimed funds. Resolution of the money as unclaimed funds could lead to the unfortunate result of Defendant obtaining a portion of this money, undermining the compensatory and rehabilitative goals of the restitution payment. Alternatively, someone with no justification for receiving the money might obtain it. Such outcomes would be inconsistent with the policy goals of the MVRA.

A similar case with a slightly different outcome, is the case of *United States v. Hamburger*, 414 F. Supp. 2d 219 (E.D.N.Y. 2006). There, the defendant and victim entered a pre-sentencing civil settlement attempting to resolve the restitution award. As part of this settlement, the victim renounced his share of the restitution award. Given the victim's inability, as noted earlier, to

control the penal component of the sentence, the court acted well within its authority to maintain the restitution obligation. The question then became what to do with the now-renounced restitution payment. We submit that payment to the VCF is a valid option in these circumstances, as it is in the circumstances of this case, and we ask the Court to consider such a resolution.

The defense contends that the finality and immutability of the restitution judgment under § 3664(o) is an insurmountable obstacle to an amended restitution judgment here. Both the *Johnson* and the *Hankins* decisions relied upon by the United States discuss this important issue. *See* Opp'n at 5-6. As noted above, however, the United States is not seeking to modify the restitution order. Rather, the United States is seeking an order correcting the disbursement of restitution proceeds that cannot be disbursed to the intended victim recipients due to victim unavailability. As stated by the Court in *Hankins*, "[o]nce the district court determined that the attempted settlement between [defendant and [the victim's assignee] did not modify the restitution order and … the victim's assignee[] had disclaimed further restitution through its filing of a notice of satisfaction, the district court directed payment of the restitution to the Fund." *Hankins*, 858 F.3d at 1278. Further, the *Hankins* court explains: "Put simply, the district court ***ordered what makes practical sense within the spirit and confines of the MVRA***: it did not modify the sentence itself but redirected payments to the Fund. We conclude that the district court had the flexibility under the MVRA to effect this solution. Three principles derived from the statute support this interpretation: the mandatory nature of restitution, the fact that the payment obligation is not contingent on the victim [or anyone else], and the purpose of restitution." *Id*.

## CONCLUSION

For the foregoing reasons, the Court should grant the United States' motion to amend the judgment to assign restitution payments to the Victims of Crime Fund.

Dated: September 8, 2025

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

BRIAN P. HUDAK, D.C. Bar #90034769
Chief, Civil Division

By: *\/s/ Oliver W. McDaniel*
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2500 (main)

*Attorneys for the United States of America*