**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.: 01-76 (RC) |
| | : | |
| STEVEN DAVAL JONES, | : | Re Document Nos.: 145-1, 148, 163 |
| | : | |
| Defendant. | : | |

# MEMORANDUM OPINION

## DENYING THE GOVERNMENT'S APPLICATION FOR WRIT OF EXECUTION AND MOTION TO AMEND THE JUDGMENT

## I. INTRODUCTION

In 2001, Defendant Steven Daval Jones pleaded guilty to conspiracy to commit fraud in violation of 18 U.S.C. § 371. The Court sentenced Mr. Jones to 60 months' imprisonment and ordered him to pay his victims $354,936 in restitution. Over 20 years have passed since Mr. Jones was released from prison. Nevertheless, in April 2025—less than two months before Mr. Jones's liability to pay restitution terminated under 18 U.S.C. § 3613(b)—the Government applied for a writ of execution and sought to levy his house to collect his outstanding restitution balance. For the reasons stated below, the Court concludes that Mr. Jones's liability to pay restitution, and any lien to collect that restitution, has terminated under the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A. Accordingly, the Court denies the Government's application for a writ of execution, vacates its protective order regarding the house, and denies as moot the Government's motion to amend the Judgment.

## II. BACKGROUND

In July 2001, Mr. Jones pleaded guilty to conspiring to commit fraud, in violation of 18 U.S.C. § 371. Plea Agreement, ECF No. 50. In October 2001, the Court sentenced him to 60 months' imprisonment, to be followed by three years of supervised release, and ordered him to pay $354,936 in restitution. Judgment at 2–3, 5–6, ECF No. 54. The Judgment stated that payment would be made to victims based on a "Modified Victims Restitution Address List," which was "to be submitted by the Probation Officer to the Clerk's Office Financial Division." *Id.* at 5. It is unclear what became of that list.

Mr. Jones was released from prison on June 3, 2005. *See* Probation Request at 1, ECF No. 85. As of April 2025, Mr. Jones had paid about $94,000 in restitution, but with interest accruing, his debt balance was almost $420,000. U.S.'s Ex Parte & Under Seal Application for Writ of Execution ¶ 1, ECF No. 145-1. To satisfy this balance, the Government applied for a writ of execution to levy a house in D.C. that Mr. Jones owns valued at approximately $340,000. *Id.* ¶ 6.

In May 2025, the Government moved for a Protective Order regarding the house, ECF No. 147, which the Court granted, ECF No. 149. The Government also sought to amend the Judgment to assign restitution payments to the Victims of Crime Fund. *See generally* U.S.'s Mot. to Amend J., ECF No. 148. In its motion, the Government explained that "Court records . . . reflect that restitution payments are not being disbursed to victims but are accumulating as unclaimed funds." *Id.* at 1. U.S. Probation reported to the U.S. Attorney's Office that it had no victim list in this case, so the Government proposed the Victims of Crime Fund as a substitute. *See id.*

Mr. Jones opposes both motions. *See* Def.'s Opp'n, ECF No. 151. He argues that his restitution liability under the MVRA terminated on June 3, 2025, pursuant to 18 U.S.C. § 3613(b), *id.* at 3–4; that the Court lacks the authority to amend the restitution order beyond circumstances prescribed by statute, *id.* at 5–12; and that for both reasons, the Court should deny the Government's application for a writ of execution and vacate its protective order, *id.* at 12. The parties have now fully briefed these motions. *See* U.S.'s Suppl. Mem. in Supp. of Application for Writ of Execution ("Gov't Suppl. Mem."), ECF No. 155; Def.'s Resp. to U.S.'s Suppl. Mem. ("Def.'s Resp."), ECF No. 159; U.S.'s Reply in Supp. of Suppl. Mem. ("Gov't Reply"), ECF No. 161; U.S.'s Reply to Mot. to Amend J. ("Gov't 2d Reply"), ECF No. 162.

In the Government's final brief, it explained that a U.S. Attorney's Office staff member had "contacted the Clerk's Office and obtained a victim list in this case showing 115 victims and allotments of restitution." Gov't 2d Reply at 1. The Government explained that it was working with the U.S. Postal Inspection Service "to contact the listed victims and determine their continued willingness to receive restitution payments in this case." *Id.* at 2. The Government has moved for leave to file under seal a list reflecting the results of those efforts, which contains victim names and addresses.[1] ECF No. 163.

## III. LEGAL STANDARD

In 1982, Congress passed the Victim and Witness Protection Act ("VWPA"). Pub. L. No. 97-291 § 5, 96 Stat. 1248, 1253 (codified at 18 U.S.C. § 3663). "A product of the victims' rights movement that had picked up steam in the 1970s, that Act provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v.*

[1] Having considered the six factors articulated in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), the Court grants the motion for leave to file under seal.

*Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011). In 1996, Congress passed the Mandatory Victims Restitution Act ("MVRA"). Pub. L. No. 104-132 § 204, 110 Stat. 1214, 1227 (codified at 18 U.S.C. § 3663A). Under the MVRA, "defendants convicted of certain federal crimes must pay monetary restitution to the victims." *Ellingburg v. United States*, No. 24-482, 2026 WL 135982, at *1 (U.S. Jan. 20, 2026). "Congress intended restitution under the MVRA to both punish and compensate." *Id.* at *3.

"Federal courts do not have inherent authority to order restitution." *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012). Rather, the authority to order restitution flows from statute, here the MVRA. *See id.* Thus, principles of statutory interpretation provide the framework for resolving this dispute.

"Courts must 'interpret statutes, no matter the context, based on the traditional tools of statutory construction.'" *Pac. Gas & Elec. Co. v. FERC*, 113 F.4th 943, 947 (D.C. Cir. 2024) (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 403 (2024)). As always, courts "begin with the text" and "look to the ordinary meaning of its key terms." *Id.* at 948 (first quoting *City of Clarksville v. FERC*, 888 F.3d 477, 482 (D.C. Cir. 2018); then quoting *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 460 (D.C. Cir. 2024)). And "[i]t is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)).

## IV. ANALYSIS

The Court first considers how the termination of Mr. Jones's liability to pay restitution affects the Government's pending application for a writ of execution. The Court concludes that

any lien on Mr. Jones's property terminated with his liability, and that any claim to his property for restitution under the MVRA was unenforceable after June 3, 2025. As a result, the Court denies the Government's application and vacates the Protective Order. And because the Government has now identified victims willing to accept restitution payments that will likely deplete the roughly $94,000 Mr. Jones has paid in restitution, the Court denies the Government's motion to amend the Judgment. Instead, the Court instructs the Government to pay the victims it has identified, as the Court ordered in the original Judgment.

**A. Termination of Liability**

The dispositive issue before the Court is whether a timely filed application to levy property subject to a lien for restitution terminates when the underlying liability terminates. Based on the plain meaning of the MVRA's text, the answer is yes.

An order of restitution pursuant to the MVRA "shall be issued and enforced in accordance with section 3664." 18 U.S.C. § 3663A(d). Under that section, "[a]n order of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of this title; or by all other available and reasonable means." *Id.* § 3664(m)(1)(A). Subchapter B of chapter 229 includes § 3613, titled "Civil remedies for satisfaction of an unpaid fine." *See also id.* § 3613(f). That section provides in relevant part:

> **(b) Termination of Liability.**-- . . . The liability to pay restitution shall terminate on the date that is the later of 20 years from the entry of judgment or 20 years after the release from imprisonment of the person ordered to pay restitution. In the event of the death of the person ordered to pay restitution, the individual's estate will be held responsible for any unpaid balance of the restitution amount, and the lien provided in subsection (c) of this section shall continue until the estate receives a written release of that liability.
>
> **(c) Lien.**-- . . . [A]n order of restitution made pursuant to sections 2248, 2259, 2264, 2327, 3663, 3663A, or 3664 of this title, is a lien in favor of the United States on

> all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986. The lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated under subsection (b).

*Id.* § 3613(b)–(c).

So, if a defendant is sentenced to a period of imprisonment, then his "liability to pay restitution" terminates "20 years after [his] release from imprisonment." *Id.* § 3613(b). That order of restitution "is a lien in favor of the United States on all property and rights to property" of the defendant "as if the liability . . . were a liability for a tax assessed" under the federal tax code. *Id.* § 3613(c). Thus, the tax code provides the legal mechanisms for collecting restitution. *See, e.g.*, 26 U.S.C. § 6334 (enumerating types of property exempt from levy); *id.* § 6335 (providing procedures for the sale of seized property). The lien "continues . . . until the liability . . . is terminated under subsection (b)," 20 years after the defendant's release from imprisonment. 18 U.S.C. § 3613(c).

Here, Mr. Jones was released from prison on June 3, 2005, so his "liability to pay restitution" terminated on June 3, 2025.[2] *See id.* § 3613(b). Accordingly, the lien on his house also ended that day. *See id.* § 3613(c). But the parties dispute the effect of the termination of restitution liability on the Government's pending application for a writ of execution on the house that was filed before Mr. Jones's restitution liability, and the lien, terminated. *See* Def.'s Opp'n at 12; Gov't Suppl. Mem. at 2.

---

[2] The Government, somewhat confusingly, now disputes this liability termination date without meaningful explanation, and despite having taken this position previously. *See* Gov't Reply at 2 ("[T]he defense tries but fails to find substantive support for the bald contention that liability terminated in this case on or before June 3, 2025."). *But see* U.S.'s Mot. for Renewed Writ of Wage Garnishment at 2, ECF No. 139 ("The United States submits that, relying on §§ 3613 (b) & (f) and Defendant's date of release from imprisonment on June 3, 2005, Defendant is subject to enforcement action through June 3, 2025.").

The parties' dispute centers on the applicability of one provision of the tax code:

> **(a) Length of period**
> Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun--
> **(1)** within 10 years after the assessment of the tax . . . .
>
> If a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected by levy shall be extended and shall not expire until the liability for the tax . . . is satisfied or becomes unenforceable.

26 U.S.C. § 6502(a). Mr. Jones argues that this provision "puts a ten-year time limitation on the period when the collection proceeding must begin." *See* Def.'s Resp. at 6. The Government responds that the tax code's 10-year statute of limitations does not apply to MVRA liens and emphasizes that the MVRA requires liens to be enforced only "***as if*** the liability of the person fined were a liability for a tax," meaning strict adherence to the tax code is not necessary. Gov't Reply at 3 (emphasis in original) (quoting 18 U.S.C. § 3613(c)). The Government explains that "Congress did not intend a complete unity for the MVRA lien and the federal tax lien but only intended the former to be treated like a tax lien." *Id.* at 4–5. That argument seems sensible, as the scope of the tax code is much broader than criminal restitution.

But while arguing that the 10-year limit in § 6502(a) does not apply to restitution liens, the Government simultaneously argues that the next sentence in that subsection—that extends the Government's time to collect on a tax liability—should apply to restitution liens. *See* Gov't Suppl. Mem. at 3 (quoting 26 U.S.C. § 6502(a)). The Government provides no persuasive explanation for why one sentence of § 6502(a) should apply to restitution liens, but the other should not. *See generally* Gov't Reply at 2–6. The applicability of § 6502(a) to restitution liens is not readily apparent to the Court, especially where the MVRA supplies its own, different limitations period.

Regardless, Mr. Jones also argues that, even if the second sentence of § 6502(a) applies to restitution liens, "the liability for the restitution terminated on June 3, 2025, and thus 'bec[a]me[ ] unenforceable' at that time." Def.'s Resp. at 6 (alterations in original). This conclusion follows from the plain meaning of the text. The Government previously appeared to agree when it argued that "Defendant is subject to enforcement action through June 3, 2025." Reply in Further Supp. of U.S.'s Mot. for Renewed Writ of Wage Garnishment at 2, ECF No. 142. But now, the Government posits that because "a MVRA lien is enforceable to the same extent as a federal tax lien," the lien should not lapse if the Government files suit prior to the expiration of the lien. *See* Gov't Suppl. Mem. at 3–4.

Mr. Jones has the better interpretation of the statutes. As explained above, Mr. Jones's liability to pay restitution terminated under § 3613(b) on June 3, 2025. And the Government's lien on his property ended when his "liability . . . terminated under subsection (b)." 18 U.S.C. § 3613(c). Thus, to the extent § 6502(a) of the tax code applies to restitution liens, the Government's restitution lien on Mr. Jones's property became "unenforceable" on June 3, 2025, despite the Government having timely filed an application for a writ of execution.

The Government's interpretation to the contrary requires that a "lien" for restitution be independent of restitution "liability." *See* Gov't Reply at 2. Under this logic, the liability can terminate while a lien based on that liability lives on. But Courts have recognized that in § 3613, "[C]ongress has used 'lien' and 'liability' interchangeably." *United States v. Joseph*, 102 F.4th 686, 690 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 2856 (2025). Thus, "the life of the lien is coterminous with the life of the liability." *Pinson v. United States*, 793 F. Supp. 3d 1355, 1357 (S.D. Ala. 2025), *appeal docketed*, No. 25-13304 (11th Cir. Sep. 23, 2025).

Congress has treated the "lien" and "liability" for restitution as two sides of the same coin, even before the MVRA. Under the VWPA version of § 3613, the relevant provisions stated:

> **(a) Lien.**--A fine imposed pursuant to the provisions of subchapter C of chapter 227 is a lien in favor of the United States upon all property belonging to the person fined. The lien arises at the time of the entry of the judgment and continues until the liability is satisfied, remitted, or set aside, or until it becomes unenforceable pursuant to the provisions of subsection (b). . . .
>
> **(b) Expiration of Lien.**--A lien becomes unenforceable and liability to pay a fine expires-
>
> **(1)** twenty years after the entry of the judgment; or
> **(2)** upon the death of the individual fined.

18 U.S.C. § 3613(a)–(b), Pub. L. No. 98-437, § 212(a)(2), 98 Stat. 1837, 2005 (1984). Under this version, the "lien" and the "liability" are one and the same. Subsection (a) states that the lien continues "until the liability is satisfied, remitted, or set aside, or until *it* becomes unenforceable pursuant to the provisions of subsection (b)." *Id.* (emphasis added). The pronoun "it" is ambiguous, as it could refer either to "the liability," the noun immediately antecedent, or "it" could refer to "[t]he lien," which "becomes unenforceable" in subsection (b). *See id.* The latter interpretation would explain why the drafters thought it necessary to add the phrase "or until it" after the disjunctive list "satisfied, remitted, or set aside." *See id.* But if "it" refers to the "lien," then subsection (b) still uses the two terms interchangeably by treating the "Expiration of *Lien*" as the same time when *liability* expires and the "lien becomes unenforceable." *See id.* (emphasis added). And if the drafters intended for "it" to be "the liability," this too demonstrates that Congress saw no difference between the lien and liability, as subsection (a) would mean the liability becomes unenforceable when the lien becomes unenforceable. *See id.* All this to say, the VWPA version of § 3613 treated the lien and liability as coterminous, meaning they both expired together. *Id.*

In addition to other changes, the MVRA amendments to § 3613 reversed the order of these provisions, and replaced the phrases "expire" and "becomes unenforceable" with "terminate":

> **(b) Termination of liability.**--The liability to pay a fine shall terminate the later of 20 years from the entry of judgment or 20 years after the release from imprisonment of the person fined, or upon the death of the individual fined.
>
> **(c) Lien.**--A fine imposed pursuant to the provisions of subchapter C of chapter 227 of this title, or an order of restitution made pursuant to sections 2248, 2259, 2264, 2327, 3663, 3663A, or 3664 of this title, is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986. The lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated under subsection (b).

18 U.S.C. § 3613(b)–(c), Pub. L. No. 104-132, § 207(c)(3), 110 Stat. 1227, 1238–39 (1996).[3] Under this version, the lien and liability are still interchangeable—the "lien . . . continues . . . until the liability . . . is terminated under subsection (b)," and under that subsection, liability terminates "the later of 20 years from the entry of judgment or 20 years after the release from imprisonment." *Id.* The MVRA version removed the word "it" from the lien subsection, such that the lien unambiguously ends when *liability* terminates. *See id.* § 3613(c). The plain text of the final sentence of subsection (c) supports that satisfaction of the liability has the same effect on the lien as termination of the liability—that is, both conditions terminate the lien and render it unenforceable. *See id.*

The Government finds its best support to the contrary in *United States v. Norwood*, 49 F.4th 189 (3d Cir. 2022). *See* Gov't Suppl. Mem. at 4–6. The Government's reading of that case, however, misses the mark. True, "the *Norwood* court recognized the critical distinction

[3] Congress later amended § 3613(b) so that restitution could be collected from a defendant's estate. *See* Justice for All Reauthorization Act of 2016, Pub. L. No. 114-324, § 2(b), 130 Stat. 1948 (2016). The parties make no argument regarding this amendment.

between two types of statutory periods: durational periods and limitations periods, with the former defining the duration of the lien and the latter establishing the liability period when a claim or complaint must be filed." *Id.* at 5. But according to the Government, the *Norwood* "court concluded that the VWPA version of 3613 was a durational period while the MVRA version is limitational." *Id.* To the contrary, the *Norwood* opinion states that "the MVRA's liability period is *not* a statute of limitations." 49 F.4th at 217 (emphasis added). Rather, the court explained that, unlike a statute of limitations, which "creates a procedural bar to seeking a remedy or prosecuting a crime but does not extinguish a plaintiff's underlying rights or the crime itself," the MVRA "expressly extinguishes a defendant's liability once the liability period has run." *Id.* at 217–18. The Eighth Circuit decision the Government quotes similarly concluded that the statutory period for a specific tax lien was also durational, rather than limitational. *See United States v. Davis*, 52 F.3d 781, 782 (8th Cir. 1995) ("The statute [26 U.S.C. § 6324(a)(1)] does not say that the government has ten years to file its claim, only that the lien lasts for ten years."). The Court agrees with the *Norwood* decision that the MVRA period is durational. Because Mr. Jones's lien is coterminous with his liability, both terminated on June 3, 2025.

To be sure, portions of *Norwood* could be read as supporting the Government's position, but that opinion lacks analysis on the pertinent statutory construction issues. Take for example the "Statutory Background" discussion. *See Norwood*, 49 F.4th at 196–97. The court contrasted the VWPA and the MVRA, explaining that "under the VWPA, when a criminal judgment imposed a restitution order, it created a lien by operation of law and started a twenty-year clock running, and when that clock ran out, two things happened: the lien became unenforceable, and the defendant's liability to pay expired." *Id.* In contrast, the court explained, "under the MVRA, a restitution lien never becomes unenforceable, and a defendant's liability to pay expires not

twenty years after entry of the defendant's judgment, but twenty years after the defendant's release from imprisonment, resulting in a significantly longer period of liability than under the VWPA." *Id.* at 197. The court reiterated this conclusion when it stated that "the MVRA version of § 3613 . . . *never* renders a lien 'unenforceable,' but simply describes when a defendant['s] liability terminates." *Id.* at 213 n.16.

The *Norwood* court appears to base its conclusion that a MVRA lien never "becomes unenforceable" on the absence of those words in the MVRA version of § 3613(b). *See id.* at 196–97, 213 n.16. But the *Norwood* court also noted that "such liens persist as long as a defendant remains liable to pay." *Id.* at 197 (citing 18 U.S.C. § 3613(c)). The court did not provide any further analysis on the effect of the final sentence of § 3613(c) or what it means when a lien no longer "continues." And confusingly, later in the opinion the court explained that the punishment of being sentenced to pay restitution "continues until the *lien* 'is satisfied, remitted, set aside, or is terminated' at the end of the liability period," which seemingly conflates enforceability of the lien with the liability period. *See id.* at 219 (emphasis added) (quoting 18 U.S.C. § 3613(c)). Ultimately, it is unclear how much weight to assign these passing remarks; after all, the *Norwood* court was deciding whether the MVRA could be applied retroactively without violating the Constitution's Ex Post Facto Clause. *See id.* at 220.

This Court is unpersuaded that the MVRA's omission of the phrase "becomes unenforceable" untethers the lien from the liability. The Government cites no legislative history to support that position, and the Court is aware of none. Under the plain text of § 3613, the liability and the lien are coterminous.[4]

[4] As Mr. Jones notes, this conclusion is consistent with an argument the Government previously made while seeking to garnish Mr. Jones's wages. *See* U.S.'s Mot. for Renewed Writ of Wage Garnishment at 3–4 ("[T]he length of time that a restitution judgment is enforceable is

Analogizing restitution liens to tax liens does not overcome the text. In an attempt to do so, the Government primarily relies on *United States v. Pegg*, No. 16-cv-60289, 2016 WL 5234616 (S.D. Fla. Sept. 22, 2016). *See* Gov't Suppl. Mem. at 3–4. There, the district court treated the VWPA's 20-year liability period as a "statute of limitations" and reasoned that because a restitution lien "is enforced in the same manner as a tax lien, the filing of this suit prior to that deadline was timely." *Pegg*, 2016 WL 5234616, at *2. The reasoning in *Pegg* appears faulty, as the court did not grapple with the effect of the lien becoming "unenforceable" after the 20-year period. *See id.* The court in *Norwood* explained that this omission occurred because the *Pegg* court "was interpreting the MVRA version of § 3613." *Norwood*, 49 F.4th at 213 n.16. But that explanation does not seem accurate; it appears the court in *Pegg* applied the VWPA version of § 3613 because the defendant had been sentenced to 360 months' imprisonment in February 1996, and the opinion calculates the 20-year period as ending on February 20, 2016, 20 years from the entry of judgment, without mention of the defendant being released from prison. *See Pegg*, 2016 WL 5234616, at *1–2 ("Accordingly, the United States is entitled to seek foreclosure of its lien against the Defendants' property even under the February 1996 version of 18 U.S.C. § 3613(b) [that is, the VWPA version]."). Because the effect of termination of liability on a lien under the MVRA is the crux of the issue presented here, the Court is unsatisfied to rest its decision on the nonbinding analysis in *Pegg*.

Instead, applying a construction of § 3613 that treats restitution liability and liens as coterminous resolves the question here, regardless of the applicability of 26 U.S.C. § 6502(a). As the Government notes, "[t]here can be no complete analogy between restitution and tax

---

limited. . . . 'The lien becomes unenforceable 20 years from the entry of judgment or 20 years ***after the release from imprisonment*** of the person, whichever is later.'" (emphasis in original) (quoting *United States v. Pickett*, 505 F. App'x 838, 841 (11th Cir. 2013)).

liens." Gov't Reply at 4. But assuming § 6502(a) applies to restitution orders and is not entirely displaced by the 20-year durational period in § 3613(b), the time to collect that restitution expires if "the liability for the [restitution] . . . is satisfied or becomes unenforceable." 26 U.S.C. § 6502(a). As discussed above, the plain text of § 3613(c) treats the lien the same regardless of whether the "liability is satisfied . . . or is terminated under subsection (b)." 18 U.S.C. § 3613(c). And as the Government cannot reasonably dispute that Mr. Jones's liability to pay restitution has now terminated, the timeliness of the Government's filing of its application for a writ of attachment is immaterial, even under § 6502(a). Because any restitution liability, and any corresponding lien, has now terminated, there is no basis for the Government to levy Mr. Jones's house. Thus, the Court will deny the Government's application to do so.

**B. Amendment of Judgment**

Having denied the Government's application for a writ of execution, and given factual developments since these motions were filed, the Government's motion to amend the Judgment is now moot. The Government originally sought to amend the Judgment in this case because "restitution payments [were] not being disbursed to victims but [were] accumulating as unclaimed funds." U.S.'s Mot. to Amend J. at 1. Apparently, a list of victims had not been submitted to the Clerk's Office as the Judgment instructed. *See* Judgment at 5. Fortunately, in September 2025 the Government was able to find a list and began contacting victims. *See* Gov't 2d Reply at 1–2. Thus, the Court sees no reason why the original Judgment should not be enforced or why those victims should not be compensated for their harms.

Moreover, the Government previously represented that Mr. Jones had paid about $94,000 in restitution as of April 2025. U.S.'s Ex Parte & Under Seal Application for Writ of Execution ¶ 1. As Mr. Jones's liability for restitution expired on June 3, 2025, the sum collected by the

Government by that date is the amount to be distributed. The Victim List the Government submitted identifies "Contacted Victims" with damages totaling over $89,000. *See* ECF No. 163-2. That list also indicates that correspondence has been sent to victims with damages valued at over $150,000. *See id.* The Court has little doubt that, through the exercise of reasonable effort, the Government will be able to deplete the funds Mr. Jones paid in restitution on a pro rata basis to these victims, who are no longer "unavailable, unresponsive, incompetent or nonexistent." *See* Gov't 2d Reply at 1. For these reasons, the Court denies the Government's motion to amend the Judgment without deciding whether amendment to assign payments to the Victims of Crime Fund would be lawful.

## V. CONCLUSION

For the foregoing reasons, the Government's Application for Writ of Execution (ECF No. 145-1) is **DENIED**; the Government's Motion to Amend Judgment (ECF No. 148) is **DENIED as moot**; and the Government's Motion for Leave to File Under Seal the Victim List (ECF No. 163) is **GRANTED**. Accordingly, the Protective Order to preserve assets pending the Court's resolution of the Application for a Writ of Execution (ECF No. 149) is **VACATED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: January 21, 2026

RUDOLPH CONTRERAS
United States District Judge